## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| TRACELINK, INC. | Civil Action No. 1:17-1197-AJT-IDD |
| Plaintiff, | |
| | **DECLARATION OF** |
| vs. | **MATTHEW L. CANTOR IN** |
| | **OPPOSITION TO DEFENDANT'S** |
| HEALTHCARE DISTRIBUTION ALLIANCE, | **MOTION TO DISMISS AND** |
| | **REQUEST FOR JUDICIAL** |
| Defendant. | **NOTICE** |

I, Matthew L. Cantor, declare, under penalty of perjury, as follows:

1.      I am a partner at Constantine Cannon LLP, counsel for Plaintiff TraceLink, Inc. ("TraceLink").  I am admitted to practice *pro hac vice* before this Court.  I have personal knowledge of the facts set forth herein and with the proceedings in this case.

2.      I submit this declaration in opposition to the request of Defendant Healthcare Distribution Alliance ("HDA"), in its Motion to Dismiss Pursuant to Rule 12(b)(6), filed on December 29, 2017 (ECF No. 20), to consider two documents appended to its Brief in Support of its Motion to Dismiss ("HDA Mem.").  Those documents are purported current versions of a User Agreement that HDA requires Users of its Origin track and trace product to sign (HDA Mem. Ex. A) and a Contributor Agreement that HDA requires data Contributors to Origin to sign (HDA Mem. Ex. B) (the "Revised Agreements").   HDA argues that the Revised Agreements are incorporated by reference into TraceLink's Complaint and seeks that the Court take judicial notice of same.

3.      In September and October 2017, TraceLink first brought to the attention of HDA the concerns set forth in the Complaint filed by TraceLink on October 23, 2017.  Among these concerns were the anticompetitive and exclusionary effects of two Origin Agreements made

available on HDA's website, a User Agreement and a Contributor Agreement, that HDA

required to be executed to input, access, and/or use HDA's Origin system.  Copies of these two

license agreements are attached to this Declaration as Exhibits A and B, respectively (the

"Original Agreements").  In particular, TraceLink contended that the language of the Original

Agreements, in particular Section 5 of the User Agreement and Section 8 of the Contributor

Agreement, excluded TraceLink and other track and trace system competitors from accessing or

using the Origin database.

4.      At no time prior to the filing of the Complaint did HDA contest that the Original

Agreements with the exclusionary language were being offered by HDA, or inform TraceLink or

its counsel that any changes were made to the Original Agreements.

5.      TraceLink based the allegations of its Complaint on the Original Agreements, and

believed they continued in force as of the date the Complaint was filed.

6.      On December 29, 2017, HDA moved to dismiss.  Attached to the supporting brief

filed by HDA on that date were the Revised Agreements (ECF Nos. 21, 26).  HDA contends in

its Brief that the TraceLink Complaint "mischaracterizes" the description and impact of the

Origin Agreements.  HDA Mem. at 15-18.  To support this contention, HDA attaches the

Revised, but not the Original, Agreements to its Brief.  HDA asks the Court to consider these

purportedly Revised Agreements as incorporated by reference into the TraceLink Complaint and

to take judicial notice of the Revised Agreements.  HDA Mem. at 16 n.3.  HDA's Motion fails to

even acknowledge the existence of the Original Agreements, previously offered on HDA's

website.

7.      After review of HDA's brief, counsel for TraceLink discovered that the Revised Agreements differed from Original Agreements.  Redlines comparing the Revised Agreements to the Original Agreements are attached as Exhibits C and D.

8.      On January 8, 2018, counsel for TraceLink e-mailed counsel for HDA to inquire about the purported changes.  This e-mail correspondence is attached to this Declaration as Exhibit E.

9.      HDA's counsel responded to TraceLink's January 8, 2018 email on January 9, 2018.  Ex. E. According to HDA's counsel, the Revised Agreements may not have been posted on the HDA website as current versions of those Agreements at the time of the Complaint.  Ex. E.  Nonetheless, without offering any evidentiary foundation for this claim, HDA counsel asserted that the Revised Versions of the Agreements were current at the time of the Complaint.  HDA counsel did not provide any evidence showing that the Revised Agreements had been executed by anyone at the time of the Complaint.  Nor did it provide any evidence showing that Original Agreements previously executed by Users or Contributors were superseded by the Revised Agreements.

10.     The changes purportedly made to the Revised Agreements evidently attempt to respond to the anticompetitive concerns identified by TraceLink and communicated to HDA before TraceLink filed the Complaint.   In particular, the Revised Agreements contain changes to the sections that enforce certain anticompetitive conduct alleged in the Complaint.  *See* Compl. ¶ 50.  Regardless, the changes purportedly made in the Revised Agreements do not lessen the anticompetitive impact of the data restrictions in the User and Contributor Agreements, as the fundamental prohibitions contained in the Original Agreements persist in the Revised Agreements.  *See* TraceLink Mem. at 3 n.1, 9-10, 20-24.

11.     Among the changes made by HDA, the exclusionary "Restrictions" in Section 5 of the Original Agreement that began "User will not and will not permit others to directly or indirectly" do the nine (9) listed acts, now begins "Except as provided in Section 1 . . . ."  Ex. C § 5.  That Section 1 contains a limited license to take certain actions, but otherwise limits Users' access and use of the Origin track and trace system, and further restricts the ability of Users to contract with third parties ("Authorized Users") to perform their obligations under the agreement.  In that regard, Section 1 purportedly has been revised to impose a new restriction on competition by allowing only Users, but not Authorized Users, to "provide their datasets and the GTIN Records to their customers for their and their customers' internal business uses."  *See* Ex. C at § 1(c).  Thus, even if track and trace competitors could become Authorized Users of Origin (as HDA now asserts in its Brief), under the Revised Agreements, Authorized Users cannot relay data taken from the Origin database to the customers of Origin Users.  Relaying such data to a User's customers is a fundamental attribute of any track and trace solution.

12.     Moreover, no substantive change was made to Section 5(h) of the User Agreement, which flatly prohibits Users and Authorized Users from directly or indirectly competing against Origin—regardless of whether that competitive service uses any protectable or proprietary aspects of Origin.  Ex. A, C § 5(h); *see also* Ex. B, D § 8(g).  This contravenes HDA's assertions that competitors, like TraceLink, can become Authorized Users that can access Origin.

13.     Because HDA has made no evidentiary foundation for the purportedly Revised Agreements, and a dispute exists as to the use and effect of the Original Agreements, the Court should not incorporate the Revised Agreements into its analysis of the Complaint nor should it take judicial notice of them.  Nonetheless, even if the Court did so, because the changes to the

4

Original Agreements made by the purported Revised Agreements do not lessen the anticompetitive effect of the Origin User and Contributor Agreements, these Agreements continue, even if revised, to violate antitrust and tortious interference law.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 11, 2018.

By: _____

Matthew L. Cantor (phv)
CONSTANTINE CANNON LLP
335 Madison Avenue
New York, NY 10017
(212) 350-2700 (tel.)
(212) 350-2701 (fax)
mcantor@constantinecannon.com

# Exhibit A

**ORIGIN HDA PRODUCT DATA SOURCE USER AGREEMENT**

| User Full Company Legal Name: | |
|---|---|
| User Company Address: | |
| User Company Contact Name and Email Address: | |
| Effective Date: | |

This ORIGIN HDA PRODUCT DATA SOURCE USER AGREEMENT ("Agreement")is entered into by and between the Healthcare Distribution Alliance, having a place of business at 901 North Glebe Road, Suite 1000, Arlington, Virginia 22203 ("HDA") and the company named above (referred to herein as the "User") with the Effective Date set forth above.  HDA operates the Origin HDA Product Data Source Service, which contains a database (the "Database") of GTIN Records (as defined below) uploaded by companies in the pharmaceutical industry supply chain.  "GTIN" means Global Trade Item Number.  "GTIN Records" means numbers submitted under the GTIN system and associated product data.  "GTIN Data" means the GTIN Records from companies in the pharmaceutical supply chain, which are part of the Database.

**1.      User**

Provided that User is in compliance with the terms of this Agreement, HDA grants User a limited, personal, revocable, nonexclusive, nonsublicenseable, nontransferable license during the Term to (a) access and use the Database through the Origin HDA Product Data Source Service only for Users' internal business use and only by its Authorized Users (as such term is defined below) in accordance with the terms hereof and to (b) download Data and create data sets only for its internal business use, and only by its Authorized Users (the "License").  As between the Parties, HDA is owner of the Database and the data therein. "Authorized Users" means current employees, subcontractors, independent contractors and agents of User who are authorized by User to exercise the license rights of this Section 1 as end-users of User.  No rights of ownership to User for any aspects of the Origin HDA Product Data Source Service.

**2.      Availability**

HDA and its providers (including ValueCentric Pharmaceutical Network Solutions, LLC) will use commercially reasonable efforts to make the Database available 24 hours a day, 7 days a week, except during maintenance and update periods and when unavailability is caused by circumstances beyond HDA's or its providers' reasonable control.  Such circumstances include, without limitation, an act of God, act of government, extreme weather, flood, fire, civil unrest, acts of terrorism, strike or other labor problem, Internet service provider failure or delay, denial of service attacks and similar interference with Database operations, and acts or failures to act of third parties. HDA will provide access to the Database in accordance with laws and regulations applicable to HDA and with pharmaceutical industry practices and subject to License's access to and use of the Database and Data and conduct of all other activities hereunder in compliance with the same.

**3.      User Obligations**

User will (a) access and use the Origin HDA Product Data Source Services  the, Database and the data sets it creates only in accordance with this Agreement; (b) cause all Authorized Users to comply with the terms of this Agreement and be responsible for each      Authorized User's compliance with this Agreement;  (c) use commercially reasonable efforts to prevent unauthorized access to and use of the Origin HDA Product Data Source the Database and the Data; and (d) promptly notify HDA if it knows or has reason to suspect such unauthorized access or use.

**4.      Term and Payment**

User shall pay all fees and applicable taxes in accordance with the Terms and Payment Schedule set out in Schedule 1.  The Term of this Agreement begins on the Effective Date and terminates upon the first to occur of the

following:  (a) the User fails to pay any fee when due which payment is not cured within 30 days; (b) one of the parties provides notice to the other of its intent to terminate the Agreement, which notice shall not be less than 60 days prior to the termination date; or (c) HDA ceases for any reasons to offer the Origin HDA Product Data Source Service and/or access to the Database. Without limiting any other provision hereof, if any payment is more than 30 days overdue, HDA may in its discretion and without limiting its rights or remedies hereunder or at law suspend User's rights hereunder and shall restore such rights upon payment of all amounts past due.  All sales, use and other taxes assessed by any governmental authority applicable to User's receipt of products or services or otherwise due hereunder shall be paid by User as set forth in the Payment Schedule or if paid by HDA shall be promptly reimbursed by User.  HDA may increase the fees annually upon providing reasonable advance notice and substantiation for such increase to User.  In addition and if applicable, HDA shall have the right to increase the Fees when new fees or expenses are imposed on or due from HDA because of a change in the law including to account for new fees or taxes imposed with respect to the Origin HDA Product Data Source Service.  Such fees or expenses shall be assessed on a pass through basis with no mark-up.   Any such increase shall be effective as of the date of notice to User.  HDA shall have the right to pay the amount of the increase and in such case User shall promptly reimburse HDA. Upon request, HDA will provide User with substantiation of such increase.

## 5.      Restrictions

User will not and will not permit others to directly or indirectly: (a) upload any data to the Database; (b) change any Data; (c) copy GTIN Data other than as permitted pursuant to the Agreement; (d) make the Database or any GTIN Data available to, or use the same, for the benefit of anyone other than the User; (e) license, sublicense, sell, distribute, provide access to, make available, rent or lease the Database or GTIN Data, including in any service bureau or outsourcing offering; (f) change or knowingly interfere with or disrupt the integrity or operation of the Database (including

the GTIN Data) or the Orion HDA Product Data Source Service or store or transmit infringing or otherwise unlawful material or store or transmit malicious code; (g) permit direct or indirect access or use of the Database or Data in a way that circumvents the Agreement; (h) build or permit to be built a product or service competitive or create derivative works, for profit and commercial use outside of the company with the Database or the Origin HDA Product Data Source Service; and/or (i) otherwise access the Database and use it, the Data and/or the Origin HDA Product Data Source Service otherwise than as permitted pursuant to the Agreement.

## 6.      Reservation of Rights

Subject to the limited rights expressly granted hereunder, HDA, its providers, licensors and data providers reserve all of their right, title and interest in the Origin HDA Product Data Source Services, the Database and Data and all of their intellectual property rights in and related thereto. No rights are granted to User other those expressly set forth herein.  User grants HDA a worldwide, perpetual (or the longest period permitted by law), irrevocable, royalty-free license to use and incorporate into the Origin HDA Product Data Source Service, other services and the Database any suggestion, enhancement request, recommendation, correction or other feedback provided by User or its Authorized Users and other users related to the operation of the Origin HDA Product Data Source Service or Database.

## 7.      DISCLAIMERS AND LIMITATION OF LIABILITY AND EXCLUSIONS

USER REPRESENTS AND WARRANTS AND COVENANTS DURING THE TERM TO HDA THAT IT HAS THE RIGHT TO RECEIVE, ACCESS AND USE THE ORIGIN HDA PRODUCT DATA SOURCE SERVICE, DATABASE AND GTIN DATA IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT.  USER ACKNOWLEGES THAT ALL GITN RECORDS ARE PROVIDED BY ENTTIES IN THE PHARMACEUTICAL SUPPLY CHAIN AND THAT THOSE ENTITIES AND NOT HDA ARE RESPONSIBLE FOR THE ACCURACY, COMPELETELY, AND TIMELY CORRECTION OF THE GTIN RECORDS THEY SUBMIT. EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY

MAKES ANY WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED STATUTORY OR OTHERWISE AND EACH PARTY SPECIFICALLY AND EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANT OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, TO THE MAXIMUM EXTENT PERMITTED BY LAW. THE ORIGIN HDA PRODUCT DATA SOURCE SERVICE, THE DATABASE AND THE DATA AND ALL SERVICES PROVIDED BY OR ON BEHALF OF HDA ARE PROVIDED "AS-IS" AND AS AVAILABLE EXCLUSIVE OF ANY WARRANTY WHATSOEVER. EACH PARTY DISCLAIMS ALL LIABILITY AND INDEMNIFICATION OBLIGATIONS FOR ANY HARM, LOSSES OR DAMAGES CAUSED BY ANY THIRD-PARTY HOSTING PROVIDERS.

The aggregate liability for each Party for all claims under this Agreement is limited to direct damages up to the amount paid under this Agreement during the 12 months before the case of action arose.

NEITHER PARTY WILL BE LIABLE FOR LOSS OF REVENUE OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES OR DAMAGES FOR LOST PROFITS, REVENUES, BUSINESS INTERRUPTION, LOSS OF DATA OR LOSS OF BUSINESS INFORMATION, EVEN IF THE PARTY KNEW THEY WERE POSSIBLE OR REASONABLY FORESEEABLE OR A PARTY'S REMEDY OTHERWISE FAILS OF ITS ESSENTIAL PURPOSE. THE FOREGOING DISCLAIMER SHALL NOT APPLY TO THE EXTENT PROHIBITED BY LAW. THE LIMITS OF LIABILITY UNDER THIS SECTION DO NOT APPLY TO ANY INFRINGEMENT OR VIOLATION OF HDA'S OR IT PROVIDERS' OR CONTENT PROVIDER'S (INCLUDING THOSE WHO UPLOAD GTIN RECORDS) INTELLECTUAL PROPERTY RIGHTS.

## 8.    General Terms

User must send notices by Express Courier or U.S. mail, return receipt requested, to HDA at the following address:

The Healthcare Distribution Alliance
Attn.: Elizabeth Gallenagh
901 North Glebe Road
Suite 1000

Arlington, VA 22203
Phone: (703) 787-0000
Fax: (703) 812-5282
Email: egallenagh@hda.org

User agrees to receive electronic notices from HDA, which will be sent by email to the email address of the User Company Contact set forth above or such other address as to which the User shall provide notice.

Notices are effective as of the date of delivery by the Express Courier, the date on the return receipt document, and, for email, the date sent. User may not assign this Agreement in whole or in part without HDA's prior express written consent. There are no third party beneficiaries to this Agreement.  To the extent that any provision, portion or extent of this Agreement is found invalid, illegal or unenforceable, then that provision, portion or extent shall be severed or deleted herefrom or limited so as to give effect to the intent of the Parties insofar as possible and the remainder of the Agreement shall remain binding upon the Parties.  The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of any other remaining provisions. Any waiver of any provision of this Agreement, or a delay by either Party in the enforcement of any right hereunder, shall neither be construed as a continuing waiver nor create an expectation of non-enforcement of that or any other provision or right.  No Party will be liable for any force majeure events or events which are beyond that party's reasonable control, including, without limitation, cyber-attacks or cyber terrorism, acts or omissions of Internet data carriers or government entities, provided that the same may delay but not relieve User of its obligation to make payments hereunder.  This is an Agreement between separate legal entities and neither Party is the agent or employee of the other or a joint venture partner of the other for any purpose whatsoever. This Agreement shall be construed under and governed by the substantive laws of the Commonwealth of Virginia without giving effect to its rules pertaining to conflicts of laws other than those giving effect to this choice of law. Any suit or action of any kind brought to enforce any provision of this Agreement shall be brought in any court of competent jurisdiction in

3

the Arlington County, Virginia.  The Parties consent to personal jurisdiction of and venue in the state and federal courts within that county.  In the event an ambiguity or question of intent or interpretation arises, this Agreement (and any applicable or relevant provision) shall be construed as if jointly drafted by the Parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any one such Party by virtue of the authorship of any of the provisions of this Agreement.  This Agreement may be executed electronically, by scanned version of the original signature pages, by facsimile, and in more counterparts, which shall be deemed an original copy, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date set forth above.

_____

User

By:_____

    Print Name
    Print Title

**HEALTHCARE DISTRIBUTION ALLIANCE**

By:_____

    Print Name
    Print Title

**Schedule 1**

**Terms and Payment**

*To be completed and tailored for each User*

# **Exhibit B**

**ORIGIN HDA PRODUCT DATA SOURCE CONTRIBUTOR AGREEMENT**

| | |
|---|---|
| Contributor Full Company Legal Name: | |
| Contributor Company Address: | |
| Contributor Company Contact Name and Email Address: | |
| Effective Date: | |

This ORIGIN HDA PRODUCT DATA SOURCE CONTRIBUTOR AGREEMENT ("Agreement") is entered into by and between the Healthcare Distribution Alliance, having a place of business at 901 North Glebe Road, Suite 1000, Arlington, Virginia 22203 ("HDA") and the company named above (referred to herein as the "Contributor") with the Effective Date set forth above. HDA provides the ORIGIN HDA Product Data Source Service which contains a database (the "Database") of GTIN data relating to pharmaceutical products and the Uploading System (as defined below). "GTIN" means Global Trade Item Number. "GTIN Records" means numbers submitted under the GTIN system and associated product data. "GTIN DATA" means the GTIN Records from all Contributors, which are part of the Database.

**1.      Contributor**

Contributor is a company operating in the pharmaceutical industry supply chain and represents, and covenants during the Term, that: (a) it is the owner of and has the right to upload the specific GTIN Records related to products for which it has responsibility to the Database through the ORIGIN HDA Product Data Source Service free of claims from other parties (the "Contributor GTIN Records"); (b) there are no pending claims, and have been no claims asserted, of any type that Contributor is not the owner of or does not have the right to upload its Contributor GTIN Records ; (c), the GTIN Records uploaded by the Contributor are the correct GTIN Records for the designated products or will be corrected immediately upon Contributor's acquisition of knowledge of the need for correction; and (d) it will update the Contributor GTIN Records as necessary to accurately correspond to the applicable products; and (e) it will not upload or change any GTIN data of any other company.

**2.      Uploading**

Contributor will upload, maintain and correct the Contributor GTIN Records using the uploading system. Contributor will upload its GTIN Records using any one of any of these 3 methods in accordance with the instructions on the Origin HDA Web Portal:  (a) uploading the a Contributor GTIN Number for one product at a time; (b) uploading a table of Contributor GTIN Numbers in one of the authorized forms (such as a flat file); (c) uploading one or more Contributor GTIN Numbers using the API available on the Web Portal.

**3.      Contributor Access Rights**

Provided that Contributor is in compliance with the terms of this Agreement, HDA grants Contributor the right to see and access only its own Contributor GTIN Records, only for its internal business use and only by its employees, independent contractors and agents it authorizes (its "Authorized Users").

**4.      License from Contributor**

Contributor agrees to and hereby grants HDA and its providers an irrevocable, nonexclusive, perpetual (or the longest period permitted by applicable law), right to incorporate the Contributor GTIN Records into the Database and to the transmit, make available, reproduce, distribute, perform, display prepare and own derivative works (as such term is defined in Section 106 of the U.S. Copyright Act, Title 17, U.S. Code) of the Contributor GTIN Records as HDA determines necessary or advisable for the operation of the Origin HDA Product Data Source Service.  As between the Parties, HDA is the owner of such Service and the Database as a whole and all intellectual property rights related thereto.

**5.      Availability**

HDA and providers (including ValueCentric Pharmaceutical Network Solutions, LLC) will use commercially reasonable efforts to make the Uploading System and the Database available 24 hours a day, 7 days a week, except during maintenance and update periods and when unavailability is caused by circumstances beyond HDA's or its service providers' reasonable control. Such circumstances include, without limitation, an act of God, act of government, extreme weather, flood, fire, civil unrest, acts of terrorism, strike or other labor problem, Internet service provider failure or delay, denial of service attacks and similar interference with Origin HDA Product Data Source Service and Database operations, and acts or failures to act of third parties. HDA will provide access to the Origin HDA Product Data Source Service and Database in accordance with laws and regulations applicable to HDA and with pharmaceutical industry practices.

## 6.     Contributor Obligations

Contributor will (a) exercise its rights, access the Database and use Origin HDA Product Data Source Service only as set forth in this Agreement; (b) be responsible for all Authorized Users' compliance with this Agreement; (c) use commercially reasonable efforts to prevent unauthorized access to and use of the Origin HDA Product Data Source and the Database and (d) promptly notify HDA if it knows or has reason to suspect any such unauthorized access or use. Contributor and not HDA is responsible for the completeness and accuracy of the GTIN Records and Contributor shall make all corrections required to make such GTIN Records complete and accurate.

## 7.     Term and Payment

Contributor shall pay all fees in accordance with the Terms and Payment Schedule set out in Schedule 1.  The Term of this Agreement begins on the Effective Date and terminates upon the first to occur of the following:  (a) Contributor fails to pay any fee when due and such failure is not cured within 30 days; (b) one of the parties provides notice to the other of its intent to terminate the Agreement not less than 60 days prior to the intended date of termination; or (c) when HDA ceases for any reason to offer the Origin HDA Product Data Source Service. All sales, use and other taxes assessed by any governmental authority applicable to Contributor's receipt of products or services or otherwise due hereunder shall be paid by Contributor as set forth in the Terms and Payment Schedule, or if paid by HDA shall be promptly reimbursed by Contributor.    If any payment is more than 30 days overdue, HDA may in its discretion and without limiting its rights or remedies hereunder or at law suspend Contributor 's rights to access and use the Origin HDA Product Data Source Service, the Database and the Data and in such case shall restore such rights upon payment of all amounts past due. HDA may increase the fees annually upon providing reasonable advance notice to Contributor. In addition and if applicable, when new fees or expenses are imposed on or due from HDA because of a change in the law  including to account for new fees or taxes imposed with respect to the Origin HDA Product Data Source Service.  Such fees or expenses shall be assessed on a pass through basis with no mark-up.   Any such increase shall be effective as of the date of notice to Contributor.  HDA shall have the right to pay the amount of the increase and in such case Contributor shall promptly reimburse HDA.  Upon request, HDA will provide Contributor with substantiation of such increase.

## 8.     Restrictions

Contributor will not and will not permit others to directly or indirectly: (a) change the Database (except that Contributor must upload, maintain and correct its Contributor GTIN Records); (b) copy Data from the Database other than its own Contributor GTIN Records; (c) make the Database or any part thereof available to, or use the same, for the benefit of anyone other than the Contributor;  (d) license, sublicense, sell, distribute, provide access to, make available, rent or lease the Database or GTIN Records, including in any service bureau or outsourcing offering; (e) change or knowingly interfere with or disrupt the integrity or operation of the Origin HDA Product Data Source Service (including the Uploading System) or the Database or store or transmit through the Uploading System any infringing or otherwise unlawful material or malicious

programming code ; (f) permit direct or indirect access or use of the Database or Data in a way that circumvents the Agreement; (g) build or permit to be built or created a product or service competitive with the Origin HDA Product Data Source Service (including without limitation by creating a derivative work of the Database or any part of the HDA Product Data Source Service for use other than by Authorized Users of Contributor in accordance with this Agreement) and/or (h) use the Origin HDA Product Data Source Service (including the Uploading System), access to the Database and use any of the foregoing other than as permitted pursuant to the Agreement.

## 9. Reservation of Rights

Subject to the limited rights expressly granted hereunder, HDA and its service providers, and data providers reserve all of their right, title and interest in the Origin HDA Product Data Source Service, the Database and all of their intellectual property rights in and related thereto. No rights are granted to Contributor other those expressly set forth herein. Contributor grants HDA a worldwide, perpetual (or the longest period permitted by law), irrevocable, royalty-free right and license to use and incorporate into or use in connection with the Origin HDA Product Data Source Service and the Database any suggestion, enhancement request, recommendation, correction or other feedback provided by Contributor or its Authorized Users and other users related to the operation of the Origin HDA Product Data Source Service or the Database.

## 10. DISCLAIMERS AND LIMITATION OF LIABILITY AND EXCLUSIONS

CONTRIBUTOR REPRESENTS AND WARRANTS AND COVENANTS DURING THE TERM TO HDA THAT IT HAS THE RIGHT TO RECEIVE, ACCESS AND USE THE ORIGIN HDA PRODUCT DATA SOURCE , DATABASE AND GTIN RECORDS IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT. EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED STATUTORY OR OTHERWISE AND EACH PARTY SPECIFICALLY AND EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANT OF

MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, TO THE MAXIMUM EXTENT PERMITTED BY LAW. THE ORIGIN HDA PRODUCT DATA SOURCE SERVICE, THE DATABASE AND THE GTIN RECORDS AND ALL SERVICES PROVIDED BY OR ON BEHALF OF HDA ARE PROVIDED "AS-IS" AND "AS AVAILABLE" WITHOUT ANY WARRANTY WHATSOEVER. EACH PARTY DISCLAIMS ALL LIABILITY AND INDEMNIFICATION OBLIGATIONS FOR ANY HARM, LOSSES OR DAMAGES CAUSED BY ANY THIRD-PARTY HOSTING PROVIDERS.

The aggregate liability for each Party for all claims under this Agreement is limited to direct damages up to the amount paid under this Agreement during the 12 months before the case of action arose.

NEITHER PARTY WILL BE LIABLE FOR LOSS OF REVENUE OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES OR DAMAGES FOR LOST PROFITS, REVENUES, BUSINESS INTERRUPTION, LOSS OF DATA OR LOSS OF BUSINESS INFORMATION, EVEN IF THE PARTY KNEW THEY WERE POSSIBLE OR REASONABLY FORESEEABLE OR A PARTY'S REMEDY OTHERWISE FAILS OF ITS ESSENTIAL PURPOSE. THE FOREGOING DISCLAIMER SHALL NOT APPLY TO THE EXTENT PROHIBITED BY LAW. THE LIMITS OF LIABILITY UNDER THIS SECTION DO NOT APPLY TO ANY INFRINGEMENT OR VIOLATION OF HDA'S OR IT PROVIDERS' OR OTHER PROVIDERS OF GTIN RECORDS INTELLECTUAL PROPERTY RIGHTS.

## 11. General Terms

Contributor must send notices by Express Courier or U.S. mail, return receipt requested, to HDA at the following address:

The Healthcare Distribution Alliance
Attn.: Elizabeth Gallenagh
901 North Glebe Road
Suite 1000
Arlington, VA 22203
Phone: (703) 787-0000
Fax: (703) 812-5282
Email: egallenagh@hda.org

3

Contributor agrees to receive electronic notices from HDA, which will be sent by email to the email address of the Contributor Company Contact set forth above or such other address as to which the Contributor shall provide notice.

Notices are effective as of the date of delivery by the Express Courier, the date on the return receipt document, and, for email, the date sent. Contributor may not assign this Agreement in whole or in part without HDA's prior express written consent. There are no third party beneficiaries to this Agreement. The term "including" means "including, without limitation." To the extent that any provision, portion or extent of this Agreement is found invalid, illegal or unenforceable, then that provision, portion or extent shall be severed or deleted herefrom or limited so as to give effect to the intent of the Parties insofar as possible and the remainder of the Agreement shall remain binding upon the Parties. The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of any other remaining provisions. Any waiver of any provision of this Agreement, or a delay by either Party in the enforcement of any right hereunder, shall neither be construed as a continuing waiver nor create an expectation of non-enforcement of that or any other provision or right. No Party will be liable for any force majeure events or events which are beyond that party's reasonable control, including, without limitation, cyber-attacks or cyber terrorism, acts or omissions of Internet data carriers or government entities, provided that the same may delay but not relieve Contributor of its obligation to make payments hereunder. This is an Agreement between separate legal entities and neither Party is the agent or employee of the other or a joint venture partner of the other for any purpose whatsoever. This Agreement shall be construed under and governed by the substantive laws of the Commonwealth of Virginia without giving effect to its rules pertaining to conflicts of laws other than those giving effect to this choice of law. Any suit or action of any kind brought to enforce any provision of this Agreement shall be brought in any court of competent jurisdiction in the Arlington County, Virginia. The Parties consent to personal jurisdiction of and venue in the state and federal courts within that county. In the event an ambiguity or question of intent or interpretation arises, this Agreement (and any applicable or relevant provision) shall be construed as if jointly drafted by the Parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any one such Party by virtue of the authorship of any of the provisions of this Agreement. This Agreement may be executed electronically, by scanned version of the original signature pages, by facsimile, and in more counterparts, which shall be deemed an original copy, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date set forth above.

_____

Contributor

By:_____
    Print Name
    Print Title


**HEALTHCARE DISTRIBUTION ALLIANCE**

By:_____
    Print Name
    Print Title

**Schedule 1**

**Terms and Payment**

*To be completed and tailored for each Contributor*

# Exhibit C

**ORIGIN HDA PRODUCT DATA SOURCE USER AGREEMENT**

| | |
|---|---|
| User Full Company Legal Name: | |
| User Company Address: | |
| User Company Contact Name and Email Address: | |
| Effective Date: | |

This ORIGIN HDA PRODUCT DATA SOURCE USER AGREEMENT ("Agreement") is entered into by and between the Healthcare Distribution Alliance, having a place of business at 901 North Glebe Road, Suite 1000, Arlington, Virginia 22203 ("HDA") and the company named above (referred to herein as the "User") with the Effective Date set forth above. HDA operates the Origin HDA Product Data Source Service, which contains a database (the "Database") of GTIN Records (as defined below) uploaded by companies in the pharmaceutical industry supply chain. "GTIN" means Global Trade Item Number. "GTIN Records" means numbers submitted under the GTIN system and associated product data. "GTIN Data" means the GTIN Records from companies in the pharmaceutical supply chain, which are part of the Database.

**1.      User**

Provided that User is in compliance with the terms of this Agreement, HDA grants User a limited, personal, revocable, nonexclusive, nonsublicenseable, nontransferable license during the Term to: (a) access and use the Database through the Origin HDA Product Data Source Service only for Users' internal business use and only by its Authorized Users (as such term is defined below) in accordance with the terms hereof and to (b) download Data and create data sets only for its internal business use, and only by its Authorized Users (the "License"), and (c) in the case of Users which are distributors or group purchasing organizations, provide their datasets and the GTIN Records to their customers for their and their customers' internal business uses. As between the Parties, HDA is owner of the Database and the data therein. "Authorized Users" means current employees, subcontractors, independent contractors and agents of User who are authorized by User to exercise the license rights of this Section

1 as end-users of User. No rights of ownership are granted to User for any aspects of the Origin HDA Product Data Source Service.

**2.      Availability**

HDA and its providers (including ValueCentric Pharmaceutical Network Solutions, LLC) will use commercially reasonable efforts to make the Database available 24 hours a day, 7 days a week, except during maintenance and update periods and when unavailability is caused by circumstances beyond HDA's or its providers' reasonable control. Such circumstances include, without limitation, an act of God, act of government, extreme weather, flood, fire, civil unrest, acts of terrorism, strike or other labor problem, Internet service provider failure or delay, denial of service attacks and similar interference with Database operations, and acts or failures to act of third parties. HDA will provide access to the Database in accordance with laws and regulations applicable to HDA and with pharmaceutical industry practices and subject to License User's access to and use of the Database and Data and conduct of all other activities hereunder in compliance with the same.

**3.      User Obligations**

User will: (a) access and use the Origin HDA Product Data Source Services, the, Database and the data sets it creates only in accordance with this Agreement; (b) cause all Authorized Users to comply with the terms of this Agreement and be responsible for each Authorized User's compliance with this Agreement; (c) use commercially reasonable efforts to prevent unauthorized access to and use of the Origin HDA Product Data Source, the Database and the Data; and (d) promptly notify HDA if it knows or has reason to suspect such unauthorized access or use.

**4.      Term and Payment**

User shall pay all fees and applicable taxes in accordance with the Terms and Payment Schedule set out in Schedule 1. The "Term" of this Agreement begins on the Effective Date and terminates upon the first to occur of the following: (a) the User fails to pay any fee when due which payment is not cured within 30 days; (b) one of the parties provides notice to the other of its intent to terminate the Agreement, which notice shall not be less than 60 days prior to the termination date; or (c) HDA ceases for any reasons to offer the Origin HDA Product Data Source Service and/or access to the Database. Without limiting any other provision hereof, if any payment is more than 30 days overdue, HDA may in its discretion and without limiting its rights or remedies hereunder or at law suspend User's rights hereunder and shall restore such rights upon payment of all amounts past due. All sales, use and other taxes assessed by any governmental authority applicable to User's receipt of products or services or otherwise due hereunder shall be paid by User as set forth in the Payment Schedule or if paid by HDA shall be promptly reimbursed by User. HDA may increase the fees annually upon providing reasonable advance notice and substantiation for such increase to User. In addition and if applicable, HDA shall have the right to increase the ~~Fees~~fees when new fees or expenses are imposed on or due from HDA because of a change in the law including to account for new fees or taxes imposed with respect to the Origin HDA Product Data Source Service. Such fees or expenses shall be assessed on a pass through basis with no mark-up. Any such increase shall be effective as of the date of notice to User. HDA shall have the right to pay the amount of the increase and in such case User shall promptly reimburse HDA. Upon request, HDA will provide User with substantiation of such increase.

**5.      Restrictions**

Except as provided in Section 1, User will not and will not permit others to directly or indirectly: (a) upload any data to the Database; (b) change any Data; (c) copy GTIN Data other than as permitted pursuant to the Agreement; (d) make the Database or any GTIN Data available to, or use the same, for the benefit of anyone other than the User; (e) license, sublicense, sell, distribute, provide access to, make available, rent or lease the Database or GTIN Data, including in any service bureau or outsourcing offering; (f) change or knowingly interfere with or disrupt the integrity or operation of the Database (including the GTIN Data) or the ~~Orion~~Origin HDA Product Data Source Service or store or transmit infringing or otherwise unlawful material or store or transmit malicious code; (g) permit direct or indirect access or use of the Database or Data in a way that circumvents the Agreement; (h) build or permit to be built a product or service competitive to the Origin HDA Product Data Source Service, or create derivative works thereof, for profit and commercial use outside of the company ~~with~~licensed to use the Database or the Origin HDA Product Data Source Service; and/or (i) otherwise access the Database and use it, the Data and/or the Origin HDA Product Data Source Service otherwise than as permitted pursuant to the Agreement.

**6.      Reservation of Rights**

Subject to the limited rights expressly granted hereunder, HDA, its providers, licensors and data providers reserve all of their right, title and interest in the Origin HDA Product Data Source Services, the Database and Data and all of their intellectual property rights in and related thereto. No rights are granted to User other than those expressly set forth herein. User grants HDA a worldwide, perpetual (or the longest period permitted by law), irrevocable, royalty-free license to use and incorporate into the Origin HDA Product Data Source Service, other services and the Database any suggestion, enhancement request, recommendation, correction or other feedback provided by User or its Authorized Users and other users related to the operation of the Origin HDA Product Data Source Service or Database.

**7.      DISCLAIMERS AND LIMITATION OF LIABILITY AND EXCLUSIONS**

USER REPRESENTS AND WARRANTS AND COVENANTS DURING THE TERM TO HDA THAT IT HAS THE RIGHT TO RECEIVE, ACCESS AND USE THE ORIGIN HDA PRODUCT DATA SOURCE SERVICE, DATABASE AND GTIN DATA IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT.                        USER ~~ACKNOWLEGES~~ACKNOWLEDGES THAT ALL GITN RECORDS ARE PROVIDED BY ~~ENTTIES~~ENTITIES IN THE PHARMACEUTICAL SUPPLY CHAIN AND THAT THOSE ENTITIES AND NOT HDA ARE RESPONSIBLE FOR                    THE                    ACCURACY,

~~COMPELETELY~~ COMPLETENESS, AND TIMELY CORRECTION OF THE GTIN RECORDS THEY SUBMIT. EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND, WHETHER

EXPRESS, IMPLIED STATUTORY OR OTHERWISE AND EACH PARTY SPECIFICALLY AND EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED ~~WARRANT~~WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR NON- INFRINGEMENT, TO THE MAXIMUM EXTENT PERMITTED BY LAW. THE ORIGIN HDA PRODUCT DATA SOURCE SERVICE, THE DATABASE AND THE DATA AND ALL SERVICES PROVIDED BY OR ON BEHALF OF HDA ARE PROVIDED "AS-IS" AND AS AVAILABLE EXCLUSIVE OF ANY WARRANTY WHATSOEVER. EACH PARTY DISCLAIMS ALL LIABILITY AND INDEMNIFICATION OBLIGATIONS FOR ANY HARM, LOSSES OR DAMAGES CAUSED BY ANY THIRD- PARTY HOSTING PROVIDERS.

The aggregate liability for each Party for all claims under this Agreement is limited to direct damages up to the amount paid under this Agreement during the twelve (12) months before the ~~case~~cause of action arose.

NEITHER PARTY WILL BE LIABLE FOR LOSS OF REVENUE OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES OR DAMAGES FOR LOST PROFITS, REVENUES, BUSINESS INTERRUPTION, LOSS OF DATA OR LOSS OF BUSINESS INFORMATION, EVEN IF THE PARTY KNEW THEY WERE POSSIBLE OR REASONABLY FORESEEABLE OR A PARTY'S REMEDY OTHERWISE FAILS OF ITS ESSENTIAL PURPOSE. THE FOREGOING DISCLAIMER SHALL NOT APPLY TO THE EXTENT PROHIBITED BY LAW. THE LIMITS OF LIABILITY UNDER THIS SECTION DO NOT APPLY TO ANY INFRINGEMENT OR VIOLATION OF HDA'S OR ~~IT~~ITS PROVIDERS' OR CONTENT PROVIDER'S (INCLUDING THOSE WHO UPLOAD GTIN RECORDS) INTELLECTUAL PROPERTY RIGHTS.

**8. General Terms**

User must send notices by Express Courier or U.S. certified or registered mail, return receipt requested, to HDA at the following address:

The Healthcare Distribution Alliance
Attn.: Elizabeth Gallenagh
901 North Glebe Road
Suite 1000

Arlington, VA 22203 Phone: (703) 787-0000 Fax: (703) 812-5282 Email: egallenagh@hda.org

User agrees to receive electronic notices from HDA, which will be sent by email to the email address of the User Company Contact set forth above or such other address as to which the User shall provide notice.

Notices are effective as of the date of delivery by the Express Courier, the date on the return receipt document, and, for email, the date sent. User may not assign this Agreement in whole or in part without HDA's prior express written consent. There are no third party beneficiaries to this Agreement. To the extent that any provision, portion or extent of this Agreement is found invalid, illegal or unenforceable, then that provision, portion or extent shall be severed or deleted herefrom or limited so as to give effect to the intent of the Parties insofar as possible and the remainder of the Agreement shall remain binding upon the Parties. The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of any other remaining provisions. Any waiver of any provision of this Agreement, or a delay by either Party in the enforcement of any right hereunder, shall neither be construed as a continuing waiver nor create an expectation of non-enforcement of that or any other provision or right. No Party will be liable for any force majeure events or events which are beyond that party's reasonable control, including, without limitation, cyber-attacks or cyber terrorism, acts or omissions of Internet data carriers or government entities, provided that the same may delay but not relieve User of its obligation to make payments hereunder. This is an Agreement between separate legal entities and neither Party is the agent or employee of the other or a joint venture partner of the other for any purpose whatsoever. This Agreement shall be construed under and governed by the substantive laws of the Commonwealth of Virginia without giving effect to its rules pertaining to conflicts of laws other than those giving effect to this choice of law. Any suit or action of any kind brought to enforce any provision of this Agreement shall be brought in any court of competent jurisdiction in the Arlington County, Virginia. The Parties consent to personal jurisdiction and venue in the state and federal courts within that county. In the event an ambiguity or question of intent or

~~IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date set forth above.~~ interpretation arises, this Agreement (and any _____ applicable or relevant

provision) shall be construed as if jointly drafted
by the Parties

hereto, and no presumption or burden of proof shall arise favoring or disfavoring any one such Party by virtue of the authorship of any of the provisions of this Agreement. This Agreement may be executed electronically, by a scanned version of the original signature pages, by facsimile, and in one or more counterparts, each of which shall be deemed an original copy, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date set forth above.

_____
-User

By:_____
    Print Name
    Print Title

**HEALTHCARE DISTRIBUTION ALLIANCE**

By:_____
    Print Name
    Print Title

**Schedule 1**

**Terms and Payment**

*To be completed and tailored for each User*

# Exhibit D

**ORIGIN HDA PRODUCT DATA SOURCE CONTRIBUTOR AGREEMENT**

| | |
|---|---|
| Contributor Full Company Legal Name: | |
| Contributor Company Address: | |
| Contributor Company Contact Name and Email Address: | |
| Effective Date: | |

This ORIGIN HDA PRODUCT DATA SOURCE CONTRIBUTOR AGREEMENT ("Agreement") is entered into by and between the Healthcare Distribution Alliance, having a place of business at 901 North Glebe Road, Suite 1000, Arlington, Virginia 22203 ("HDA") and the company named above (referred to herein as the "Contributor") with the Effective Date set forth above. HDA provides the ~~ORIGIN~~Origin HDA Product Data Source Service (the "Origin HDA Product Data Source Service") which contains a database (the "Database") of GTIN data relating to pharmaceutical products and the Uploading System (as defined below). "GTIN" means Global Trade Item Number. "GTIN Records" means numbers submitted under the GTIN system and associated product data. "GTIN DATA" means the GTIN Records from all Contributors, which are part of the Database.

**1.      Contributor**

Contributor is a company operating in the pharmaceutical industry supply chain and represents, and covenants during the Term, that:

(a)  it is the owner of and has the right to upload the specific GTIN Records related to products for which it has responsibility to the Database through the ORIGIN HDA Product Data Source Service free of claims from other parties (the "Contributor GTIN Records"); (b) there are no pending claims, and have been no claims asserted, of any type that Contributor is not the owner of or does not have the right to upload its Contributor GTIN Records ; (c), the GTIN Records uploaded by the Contributor are the correct GTIN Records for the designated products or will be corrected immediately upon Contributor's acquisition of knowledge of the need for correction; and (d) it will update the Contributor GTIN Records as necessary to accurately correspond to the applicable products; and (e) it

will not upload or change any GTIN data of any other company.

**2.      ‐Uploading**

Contributor will upload, maintain and correct the Contributor GTIN Records using the uploading system. Contributor will upload its GTIN Records using any one of any of these three (3) methods in accordance with the instructions on the Origin HDA Web Portal: (a) uploading ~~the~~ a Contributor GTIN Number for one product at a time; (b) uploading a table of Contributor GTIN Numbers in one of the authorized forms (such as a flat file);

~~(c)~~ (c) uploading one or more Contributor GTIN Numbers using the API available on the Web Portal.

**3.      Contributor Access Rights**

Provided that Contributor is in compliance with the terms of this Agreement, HDA grants Contributor the right to see and access only its own Contributor GTIN Records, only for its internal business use and only by its employees, independent contractors and agents it authorizes (its "Authorized Users").

**4.      License from Contributor**

Contributor agrees to and hereby grants HDA and its providers an irrevocable, nonexclusive, perpetual (or the longest period permitted by applicable law), right to incorporate the Contributor GTIN Records into the Database and to ~~the~~ transmit, make available, reproduce, distribute, perform, display, prepare and own derivative works (as such term is defined in Section 106 of the U.S. Copyright Act, Title 17, U.S. Code) of the Contributor GTIN Records as HDA determines necessary or advisable for the operation of the Origin HDA Product Data Source Service. As between the Parties, HDA is the owner of such Service and the Database as a whole and all

intellectual property rights related thereto.

**5. Availability**

HDA and providers (including ValueCentric Pharmaceutical ~~Network~~ Solutions, LLC) will use commercially reasonable efforts to make the Uploading System and the Database available 24 hours a day, 7 days a week, except during maintenance and update periods and when unavailability is caused by circumstances beyond HDA's or its service providers' reasonable control. Such circumstances include, without limitation, an act of God, act of government, extreme weather, flood, fire, civil unrest, acts of terrorism, strike or other labor problem, Internet service provider failure or delay, denial of service attacks and similar interference with Origin HDA Product Data Source Service and Database operations, and acts or failures to act of third parties. HDA will provide access to the Origin HDA Product Data Source Service and Database in accordance with laws and regulations applicable to HDA and with pharmaceutical industry practices.

**6. Contributor Obligations**

Contributor will (a) exercise its rights, access the Database and use the Origin HDA Product Data Source Service only as set forth in this Agreement; (b) be responsible for all Authorized Users' compliance with this Agreement; (c) use commercially reasonable efforts to prevent unauthorized access to and use of the Origin HDA Product Data Source and the Database and (d) promptly notify HDA if it knows or has reason to suspect any such unauthorized access or use. Contributor and not HDA is responsible for the completeness and accuracy of the GTIN Records and Contributor shall make all corrections required to make such GTIN Records complete and accurate.

**7. Term and Payment**

Contributor shall pay all fees in accordance with the Terms and Payment Schedule set out in Schedule 1. The "Term" of this Agreement begins on the Effective Date and terminates upon the first to occur of the following: (a) Contributor fails to pay any fee when due and such failure is not cured within 30 days; (b) one of the parties provides notice to the other of its intent to terminate the Agreement not less than 60 days prior to the intended date of termination; or (c) when HDA ceases for any reason to offer the Origin HDA

Product Data Source Service. All sales, use and other taxes assessed by any governmental authority applicable to Contributor's receipt of products or services or otherwise due hereunder shall be paid by Contributor as set forth in the Terms and Payment Schedule, or if paid by HDA shall be promptly reimbursed by Contributor. If any payment is more than 30 days overdue, HDA may in its discretion and without limiting its rights or remedies hereunder or at law suspend Contributor 's rights to access and use the Origin HDA Product Data Source Service, the Database and the Data and in such case shall restore such rights upon payment of all amounts past due. HDA may increase the fees annually upon providing reasonable advance notice to Contributor. In addition and if applicable, when new fees or expenses are imposed on or due from HDA because of a change in the law, including to account for new fees or taxes imposed with respect to the Origin HDA Product Data Source Service. ~~Such~~, such fees or expenses shall be assessed on a pass through basis with no mark-up. Any such increase shall be effective as of the date of notice to Contributor. HDA shall have the right to pay the amount of the increase and in such case Contributor shall promptly reimburse HDA. Upon request, HDA will provide Contributor with substantiation of such increase.

**8. Restrictions**

Contributor will not and will not permit others to directly or indirectly: (a) change the Database (except that Contributor must upload, maintain and correct its Contributor GTIN Records); (b) copy Data from the Database other than its own Contributor GTIN Records; (c) make the Database or any part thereof available to, or use the same, for the benefit of anyone other than the Contributor; (d) license, sublicense, sell, distribute, provide access to, make available, rent or lease the Database or GTIN Records, including in any service bureau or outsourcing offering; (e) change or knowingly interfere with or disrupt the integrity or operation of the Origin HDA Product Data Source Service (including the Uploading System) or the Database or store or transmit through the Uploading System any infringing or otherwise unlawful material or malicious programming code ; (f) permit direct or indirect access or use of the Database or Data in a way that circumvents the Agreement; (g) build or

permit to be built or created a product or service competitive with the Origin HDA Product Data Source Service (including without limitation by creating a derivative work of the Database or any part of the HDA Product Data Source Service for use other than by Authorized Users of Contributor in accordance with this Agreement); and/or (h) use the Origin HDA Product Data Source Service (including the Uploading System), to access to the Database and/or use any of the foregoing other than as permitted pursuant to the Agreement.

**9.       Reservation of Rights**
Subject to the limited rights expressly granted hereunder, HDA and its service providers, and data providers reserve all of their right, title and interest in the Origin HDA Product Data Source Service, the Database and all of their intellectual property rights in and related thereto. No rights are granted to Contributor other than those expressly set forth herein. Contributor grants HDA a worldwide, perpetual (or the longest period permitted by law), irrevocable, royalty-free right and license to use and incorporate into or use in connection with the Origin HDA Product Data Source Service and the Database any suggestion, enhancement request, recommendation, correction or other feedback provided by Contributor or its Authorized Users and other users related to the operation of the Origin HDA Product Data Source Service or the Database.

**10.     DISCLAIMERS   AND   LIMITATION   OF
LIABILITY AND EXCLUSIONS**
CONTRIBUTOR REPRESENTS AND WARRANTS AND COVENANTS DURING THE TERM TO HDA THAT IT HAS THE RIGHT TO RECEIVE, ACCESS AND USE THE ORIGIN HDA PRODUCT DATA SOURCE SERVICE, DATABASE AND GTIN RECORDS IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT. EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED STATUTORY OR OTHERWISE AND EACH PARTY SPECIFICALLY AND EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTWARRANTY OF

DATABASE AND THE GTIN RECORDS AND ALL SERVICES PROVIDED BY OR

MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR NON- INFRINGEMENT, TO THE MAXIMUM EXTENT PERMITTED BY LAW. THE ORIGIN HDA PRODUCT DATA SOURCE SERVICE, THE

ON BEHALF OF HDA ARE PROVIDED "AS-IS" AND "AS AVAILABLE" WITHOUT ANY WARRANTY WHATSOEVER. EACH PARTY DISCLAIMS ALL LIABILITY AND INDEMNIFICATION OBLIGATIONS FOR ANY HARM, LOSSES OR DAMAGES CAUSED BY ANY THIRD-PARTY HOSTING PROVIDERS.

The aggregate liability for each Party for all claims under this Agreement is limited to direct damages up to the amount paid under this Agreement during the twelve (12) months before the ~~case~~cause of action arose.

NEITHER PARTY WILL BE LIABLE FOR LOSS OF REVENUE OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES OR DAMAGES FOR LOST PROFITS, REVENUES, BUSINESS INTERRUPTION, LOSS OF DATA OR LOSS OF BUSINESS INFORMATION, EVEN IF THE PARTY KNEW THEY WERE POSSIBLE OR REASONABLY FORESEEABLE OR A PARTY'S REMEDY OTHERWISE FAILS OF ITS ESSENTIAL PURPOSE. THE FOREGOING DISCLAIMER SHALL NOT APPLY TO THE EXTENT PROHIBITED BY LAW. THE LIMITS OF LIABILITY UNDER THIS SECTION DO NOT APPLY TO ANY INFRINGEMENT OR VIOLATION OF HDA'S OR ITS IT PROVIDERS' OR OTHER PROVIDERS OF GTIN RECORDS INTELLECTUAL PROPERTY RIGHTS.

**11.    General Terms**

Contributor must send notices by Express Courier or U.S. certified or registered mail, return receipt requested, to HDA at the following address:

The Healthcare Distribution Alliance
Attn.: Elizabeth Gallenagh
901 North Glebe Road
Suite 1000
Arlington, VA 22203  Phone: (703) 787-0000  Fax: (703) 812-5282 Email: egallenagh@hda.org

Contributor agrees to receive electronic notices from HDA, which will be sent by email to the email address of the Contributor Company Contact set forth above or such other address as to which the Contributor shall provide notice.

Notices are effective as of the date of delivery by the Express Courier, the date on the return receipt

document, and, for email, the date sent. Contributor may not assign this Agreement in whole or in part without HDA's prior express written consent. There are no third party beneficiaries to this Agreement. The term "including" means "including, without limitation." To the extent that any provision, portion or extent of this Agreement is found invalid, illegal or unenforceable, then that provision, portion or extent shall be severed or deleted herefrom or limited so as to give effect to the intent of the Parties insofar as possible and the remainder of the Agreement shall remain binding upon the Parties. The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of any other remaining provisions. Any waiver of any provision of this Agreement, or a delay by either Party in the enforcement of any right hereunder, shall neither be construed as a continuing waiver nor create an expectation of non- enforcement of that or any other provision or right. No Party will be liable for any force majeure events or events which are beyond that party's reasonable control, including, without limitation, cyber-attacks or cyber terrorism, acts or omissions of Internet data carriers or government entities, provided that the same may delay but not relieve Contributor of its obligation to make payments hereunder. This is an Agreement between separate legal entities and neither Party is the agent or employee of the other or a joint venture partner of the other for any purpose whatsoever. This Agreement shall be construed under and governed by the substantive laws of the Commonwealth of Virginia without giving effect to its rules pertaining to conflicts of laws other than those giving effect to this choice of law. Any suit or action of any kind brought to enforce any provision of this Agreement shall be brought in any court of competent jurisdiction in the Arlington County, Virginia. The Parties consent to personal jurisdiction of and venue in the state and federal courts within that county. In the event an ambiguity or question of intent or interpretation arises, this Agreement (and any applicable or relevant provision) shall be construed as if jointly drafted by the Parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any one such Party by virtue of the authorship of any of the provisions of this Agreement. This Agreement may be executed electronically, by a scanned version of the original signature pages, by facsimile, and in one or more counterparts, each of which shall be deemed an original copy, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date set forth above.

_____
Contributor

By:_____
Print Name Print Title

**HEALTHCARE DISTRIBUTION ALLIANCE**

By:_____
Print Name Print Title

**Schedule 1**

**Terms and Payment**


*To be completed and tailored for each Contributor*

# **Exhibit E**

**McAvoy, Harrison**

---

**Subject:**                    RE: HDA Motion to Dismiss


**From:** "Schaeffer, Seth A." <SSchaeffer@mcguirewoods.com>
**Date:** January 9, 2018 at 6:39:15 PM EST
**To:** "Greenstein, Seth" <sgreenstein@constantinecannon.com>
**Cc:** "Cantor, Matthew" <MCantor@constantinecannon.com>, "Justus, J. Brent" <bjustus@mcguirewoods.com>
**Subject: RE: HDA Motion to Dismiss**

> Seth,
>
> We've looked into this issue.  The versions of the agreements we attached as exhibits were the current versions at the time of the filing of the Complaint, and also are the ones that currently are available as "samples" on the HDA website.  We understand that these versions didn't make it to the website immediately, however.  That may explain any discrepancies you're seeing between what you relied on for the Complaint (presumably the samples first posted to the website) and what we attached.  In any event, the differences are immaterial—particularly to the arguments at issue.  If you want to attach to your opposition the version you relied upon, we're not going to object to that (provided, of course, it's an accurate copy).
>
> I hope this helps to clarify.
>
> Best,
> Seth
>
> **Seth A. Schaeffer**
> T: +1 804 775 1174

---

**From:** Greenstein, Seth [mailto:sgreenstein@constantinecannon.com]
**Sent:** Monday, January 08, 2018 9:52 AM
**To:** Schaeffer, Seth A. <SSchaeffer@mcguirewoods.com>; Justus, J. Brent <bjustus@mcguirewoods.com>
**Cc:** Cantor, Matthew <MCantor@constantinecannon.com>
**Subject:** HDA Motion to Dismiss

Seth and Brent –

HDA's brief in support of its Motion to Dismiss attaches as Exhibits A and B a copy of the "Origin HDA Product Data Source User Agreement" and the "Origin HDA Product Data Source Contributor Agreement," respectively.  Your Motion requests that the Court consider these exhibits as "incorporated by reference" in the Complaint or by judicial notice.

We have reason to believe these Exhibits are not the versions of these agreements offered by HDA prior to and as of the date the Complaint was filed.  Please identify the date that the specific versions of the agreements submitted as Exhibits to HDA's Motion were first made available for execution, no later than close of business January 9, so that we can sufficiently

evaluate your requests to the Court prior to January 12, when TraceLink's opposition to HDA's Motion is due.

Thank you in advance for your timely response.

Regards, Seth

Seth D. Greenstein
Constantine Cannon LLP
1001 Pennsylvania Avenue, NW
Suite 1300N
Washington, D.C. 20004
(w) 202.204.3514
(f) 202.204.3501
(m) 202.285.5000

---

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*